**KLESTADT WINTERS JURELLER**
  **SOUTHARD & STEVENS, LLP**
200 West 41st Street, 17th Floor
New York, NY 10036-7023
Telephone: (212) 972-3000
Facsimile: (212) 972-2245
Fred Stevens
Lauren C. Kiss
Christopher J. Reilly

*Special Litigation Counsel to Gregory M.*
 *Messer, Chapter 7 Trustee of the Estate of*
 *Fyre Festival LLC*

**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

---------------------------------------------------------------x
In re                                                          :
                                                               :     Chapter 7
                                                               :
FYRE FESTIVAL LLC,                                             :
                                                               :     Case No. 17-11883 (MG)
                Debtor.                                        :
---------------------------------------------------------------x
GREGORY M. MESSER, as Chapter 7 Trustee of the                 :
Estate of Fyre Festival LLC,                                   :
                                                               :
                Plaintiff,                                     :
                                                               :     Adv. Pro. No. 19-01340
        -against-                                              :
                                                               :
FYRE MEDIA INC., and WILLIAM Z.                                :
McFARLAND, a/k/a Billy McFarland,                              :
                                                               :
                Defendants.                                    :
---------------------------------------------------------------x

**MOTION OF PLAINTIFF GREGORY M. MESSER, AS CHAPTER 7 TRUSTEE,
FOR AN ORDER PURSUANT TO FED. R. BANKR. P. 7055, DIRECTING THE
ENTRY OF A DEFAULT JUDGMENT AGAINST DEFENDANTS FYRE MEDIA
<u>INC. AND WILLIAM Z. McFARLAND, a/k/a BILLY McFARLAND</u>**

**TO THE HONORABLE MARTIN GLENN,
UNITED STATES BANKRUPTCY JUDGE:**

Gregory M. Messer (the "Trustee"), as chapter 7 trustee of the estate of Fyre Festival LLC ("Fyre Festival" or the "Debtor"), plaintiff in the above-captioned adversary proceeding, by his counsel, Klestadt Winters Jureller Southard & Stevens, LLP, as and for his motion (the "Motion") for an order, pursuant to Rule 55 of the Federal Rules of Civil Procedure (the "Federal Rules"), made applicable to this proceeding by Rule 7055 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), directing the entry of a default judgment against defendants Fyre Media Inc. ("Fyre Media") and William Z. McFarland, a/k/a Billy McFarland ("McFarland," and together with Fyre Media, the "Defendants").  In support of this Motion, the Trustee submits the affidavit of Fred Stevens (the "Stevens Affidavit"), attached hereto as Exhibit A and respectfully sets forth and alleges as follows:

## PRELIMINARY STATEMENT

The Trustee commenced this adversary proceeding by filing his complaint on August 28, 2019 (the "Complaint")[1] against insiders of the Debtor.  By the Complaint, the Trustee seeks, among other things, certain declaratory relief, the avoidance and recovery of certain fraudulent transfers and related relief, including payment of attorneys' fees and costs, and damages for breach of fiduciary duties.  The Defendants have defaulted on their obligation to timely answer or otherwise move with respect to the Complaint and the Clerk of this Court has certified and entered the Defendants' defaults on the record [Docket No. 8 and 9].[2]

McFarland raised and spent over $16 million in connection with the failed Festival that the Trustee has identified thus far.  While the funds raised for the Festival were intended for Fyre Festival, nearly all of those funds were deposited into and disbursed from accounts held by Fyre Media or transferred by Fyre Media to McFarland and then disbursed by McFarland.  At this

---

[1] Capitalized terms used but not defined herein shall have the meaning ascribed to them in the Complaint.
[2] "Docket No." shall refer to documents filed in the above-referenced adversary proceeding and "DE" shall refer to documents filed in the above-referenced bankruptcy case.

2

time, the Trustee is seeking an order (a) declaring that (i) the funds raised for and by Fyre Festival were property of Fyre Festival, and (ii) the Trustee has the exclusive right to pursue the avoidance of any transfers of those funds by Fyre Media or McFarland for the benefit of Fyre Festival's bankruptcy estate, and (b) directing the immediate entry of a judgment against both Defendants in the amount of the Festival to McFarland Transfers of $10,993,267.51, and making each jointly and severally liable therefor, and against Fyre Media in the additional amount of $3,422,079.12, the difference between the total Insider Fraudulent Transfers and the Festival to McFarland Transfers (collectively, the "Liquidated Claims").[3]

The Trustee further seeks an order decreeing his entitlement to a default judgment against Defendants on all claims that require additional evidentiary submissions to determine the appropriate amount of damages (the "Unliquidated Claims").[4] The Trustee may seek a determination of the amount of the Unliquidated Claims upon a motion on notice to Defendants in the future to the extent that the judgment on the Liquidated Claims would be satisfied.[5]

It should be noted at the outset that on or around September 14, 2019, McFarland wrote to the Trustee's counsel and this Court separately in response to the Complaint to accept full responsibility to repay the creditors of the Fyre Festival and to "do whatever [he] can to help and/or provide the least amount of friction for [the Trustee], creditors, and the [C]ourt". Accordingly, the Trustee does not anticipate that the Motion will be contested by the Defendants.

---

[3] The Liquidated Claims include: Claim No. 1 (Declaratory Judgment – Property of the Estate – 11 U.S.C. § 541); Claim No. 2 (Fraudulent Conveyance – Actual Fraud – 11 U.S.C. §§ 544(b), 548(a)(1)(A) and 550; and N.Y. Debtor and Creditor Law § 276); and Claim No. 4 (Declaratory Judgment – Exclusive Right to Pursue any Avoidance of Festival Funds Transfers).

[4] The Unliquidated Claims include: Claim No. 3 (Attorneys' Fees for Avoidance of Conveyance Made with Intent to Defraud – 11 U.S.C. § 544(b), and N.Y. Debtor and Creditor Law § 276-a); and Claim No. 5 (Breach of Fiduciary Duties).

[5] While the Trustee reserves the right to seek a judgment on the Unliquidated Claims in the future, such right and exercise may be completely academic as it appears unlikely that either Fyre Media or McFarland could ever come close to even satisfying a judgment on the Liquidated Claims.

## INTRODUCTION

1. On July 7, 2017 (the "Petition Date"), an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the Debtor by alleged creditors John Nemeth, Raul Jimenez and Andrew Newman.

2. On August 29, 2017, the Court entered the Order for Relief in the Debtor's case [DE 4].

3. The Order for Relief directed the Debtor to file all schedules, statements, lists and a creditors' matrix within fourteen (14) days of its entry, or September 12, 2017, and on December 13, 2017, the Court entered an order designating McFarland as the person responsible for performing the Debtor's duties under the Bankruptcy Code [DE 26], which gave McFarland a further extension until December 27, 2017 to file the required documents with the Court. To date, McFarland has not filed the required bankruptcy schedules or statement of financial affairs, testified at a meeting of creditors, or performed any other duties as required by the Bankruptcy Code and the Court's Orders.

4. On or around August 31, 2017, Gregory M. Messer was appointed interim trustee of the Debtor's estate. On or about November 17, 2017, the Trustee presided over the first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code and duly qualified and became the permanent trustee herein by operation of section 702(d) of the Bankruptcy Code.

## JURISDICTION AND VENUE

5. This adversary proceeding relates to the bankruptcy case of *In re Fyre Festival LLC,* Debtor, Case No. 17-11883 (Bankr. S.D.N.Y. July 7, 2017) (the "Bankruptcy Case"), which is pending under chapter 7 of the Bankruptcy Code in the United States Bankruptcy Court for the Southern District of New York before the Honorable Martin Glenn (the or this "Court" or

4

"Bankruptcy Court").

6. This Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334, and the "Amended Standing Order of Reference" of the United States District Court for the Southern District of New York (Preska, C.J.), dated January 31, 2012.

7. This Motion is a core proceeding under 28 U.S.C. §§ 157(b)(2). The Trustee consents to the entry of a final order on this Motion by the Court.

8. Venue is proper in this district pursuant to 28 U.S.C. § 1409(a) because this proceeding arises in a case under the Bankruptcy Code pending in this district.

## BACKGROUND

9. By Complaint dated August 28, 2019 [Docket No. 1], the Trustee commenced the instant adversary proceeding against the Defendants, seeking among other things, certain declaratory relief, the avoidance and recovery of certain fraudulent transfers and related relief, including payment of attorneys' fees and costs, and damages for breach of fiduciary duties.

10. On August 30, 2019, the Clerk of this Court issued a summons requiring the Defendants to appear in this action and answer the Complaint (the "Summons") [Docket No. 3]. Stevens Affidavit, ¶ 4.

11. On September 5, 2019, the Summons and Complaint were personally served upon Fyre Media by first class mail at the following address:

> Fyre Media Inc.
> c/o CT Corporation Systems
> 28 Liberty Street
> New York, NY 10005

This is the address designated by Fyre Media with the New York State Department of State for the service of legal process. Stevens Affidavit, ¶ 5.

10.     The Affidavit of Service attesting to the proper service of the Summons and Complaint upon Fyre Media was filed with this Court and appears on the docket of this action as Docket No. 4. Stevens Affidavit, ¶ 6.

11.     Additionally, on September 10, 2019, the Summons and Complaint were served upon Fyre Media by first class mail at the following addresses:

>   Fyre Media Inc.
>   Attn: William McFarland, Inmate No. 91186-054
>   FCI Otisville, Federal Correctional Institution
>   P.O. Box 1000
>   Otisville, NY 10963

>   Fyre Media Inc.
>   c/o CT Corporation Systems
>   111 8th Ave., 13th Fl.
>   New York, NY 10011

Stevens Affidavit, ¶ 7.

12.     Upon information and belief formed after a reasonable inquiry, the first address was McFarland's current address at the time,[6] and the second is a potential alternative address for Fyre Media. Stevens Affidavit, ¶ 8.

13.     A Certificate of Service attesting to the additional service of the Summons and Complaint upon Fyre Media was filed with this Court on the docket of this action as Docket No. 5. Stevens Affidavit, ¶ 9.

14.     On September 5, 2019, the Summons and Complaint were personally served upon McFarland by first class mail at the following address:

>   William McFarland, Inmate No. 91186-054
>   FCI Otisville, Federal Correctional institution
>   P.O. Box 1000
>   Otisville, NY 10963

---

[6] According to the United States Department of Corrections, McFarland was subsequently transferred to FCI Elkton Federal Correctional Facility in Lisbon, Ohio.

At that time, that address was McFarland's address according to the United States Department of Corrections. Stevens Affidavit, ¶ 10.

15. The Affidavit of Service attesting to the proper service of the Summons and Complaint upon McFarland was filed with this Court and appears on the docket of this action as Docket No. 4. Stevens Affidavit, ¶ 11.

16. Defendants are not infants, in the military or incompetent persons. Stevens Affidavit, ¶ 12.

17. Pursuant to the Summons, the Defendants were required to file an answer or motion in response to the Complaint by September 30, 2019. The Defendants did not timely file an answer or responsive motion, contact the Trustee or his counsel to request an extension of time, or file a motion seeking an extension of time to answer the Complaint. To the contrary, in a letter dated September 14, 2019 to Fred Stevens, McFarland acknowledged receipt of the Summons and Complaint, accepted full responsibility for repaying "every dollar owed to investors and ticket holders," and expressed his willingness to "do whatever [he] can to help and/or provide the least amount of friction for [the Trustee], creditors, and the [C]ourt." Accordingly, the Defendants have at the very least technically defaulted on their obligation to respond to the Summons and Complaint, and have arguably consented to the entry of judgments. Stevens Affidavit, ¶ 13.

18. On October 15, 2019, counsel to the Trustee requested that the Clerk of the Court enter a default against the Defendants [Docket No. 6 and 7]. Stevens Affidavit, ¶ 14.

19. On October 16, 2019, the Clerk of the Court entered defaults against the Defendants [Docket No. 8 and 9]. Stevens Affidavit, ¶ 15.

7

**RELIEF REQUESTED**

20. Rule 55 of the Federal Rules of Civil Procedure, made applicable here by Bankruptcy Rule 7055, provides a "two-step process" for the entry of judgment against a party who fails to defend: first, the entry of a default, and second, the entry of a default judgment. *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011). "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment that terminates the litigation and awards the plaintiff any relief to which the court decides it is entitled . . . ." *Id.* at 129.

21. The Clerk of the Court has already noted a default against the Defendants. By this Motion, the Trustee seeks the entry of an order in substantially the same form as that annexed hereto as Exhibit B (the "Default Judgment Order"), pursuant to Bankruptcy Rule 7055(b)(2), granting the Trustee a judgment by default against the Defendants and directing the immediate entry of a judgment against the Defendants in substantially the same form as that annexed hereto as Exhibit C (the "Judgment").

22. As required by Local Rule 7055-2, the Clerk's entries of default are attached as Exhibit D, the Complaint is attached as Exhibit E, and the affidavit of service for the Motion is attached as Exhibit F.

**A. Declaratory Relief – Fyre Festival Funds**

23. As set forth in the Complaint, Fyre Festival maintained only two financial accounts – escrow accounts for the benefit of a flight vendor at First Western Trust Bank (account nos. ending in 0793 and 2468) (the "Air Travel Accounts"). The Air Travel Accounts

8

were established and used exclusively in connection with the booking of and payment for flights, a requirement of the Federal Aviation Administration. Complaint, ¶ 58.

24.     The Air Travel Accounts were funded with at least $1.8 million in Festival Funds (as defined below), including by three transfers – $1.22 million from McFarland that he received from Fyre Media, $313,000 from Fyre Media, and $240,000 directly from defrauded investor Carola Jain. Complaint, ¶ 59.

25.     All other funds raised and expended by Fyre Festival were deposited into and disbursed directly from accounts maintained by Fyre Media and McFarland. Complaint, ¶ 60.

26.     Not less than $14,415,346.60 of Fyre Festival's funds (together with any funds borrowed by, invested in, received for the account of, or otherwise belonging to Fyre Festival, the "Festival Funds") were transferred to, deposited into and disbursed from Fyre Media's bank accounts as set forth on Exhibit "A" to the Complaint (collectively, the "Festival to Media Transfers"). The Festival to Media Transfers include $10,471,000 in transfers by investors in and lenders to Fyre Festival[7], $1,404,531.86 in revenues from ticket purchasers, $1,500,000 from a company that paid for advance ticket sales, and $1,039,814.77 from ticket purchasers for amounts put on their Fyre Bands. Complaint, ¶ 61.

27.     Fyre Media then made transfers of Festival Funds to McFarland as set forth on Exhibit "B" to the Complaint (collectively, the "Festival to McFarland Transfers", and together with the Festival to Media Transfers, the "Insider Fraudulent Transfers"). The Festival to

---

[7] According to the complaint filed by the U.S. Securities and Exchange Commission, the actual amount of money raised from investors and lenders for Fyre Festival was approximately $16.5 million from at least 59 investors. The Trustee could only specifically identify $10,471,000 of this amount from proofs of claim filed against Fyre Festival's bankruptcy estate, Fyre Media's account statements and Fyre Festival's books and records to the extent available.

9

McFarland Transfers from January 1, 2017 to April 30, 2017 were not less than $10,993,267.51. Complaint, ¶ 62.

28.  In the first cause of action in the Complaint, and as part of the relief requested in the Default Judgment Order, the Trustee seeks a declaration that the Festival Funds were, and to the extent that they have not been transferred by Fyre Media or McFarland, are the property of Fyre Festival.  The Trustee seeks this relief because the Festival Funds transferred to the Defendants via the Insider Fraudulent Transfers were raised by investors in the Fyre Festival, lenders to the Fyre Festival, purchasers of tickets to the Festival, and purchasers of prepaid Fyre Bands by Festival attendees. Accordingly, the Festival Funds were or are the property of Fyre Festival.  Complaint, ¶¶ 67-69.

29.  Much of the Festival Funds were used to pay vendors and service providers which provided legitimate and necessary services to the Fyre Festival.  Complaint, ¶ 63.

30.  However, much of the Festival Funds were used to pay musical acts that never showed up or performed at the Festival, models and influencers who promoted the Festival at significant cost without disclosing to the public that they were paid for promoting the Festival, a production company that ultimately used the footage to co-produce a profitable Netflix documentary, a $186,250 deposit to a catering company that never provided food to the Festival, and over $1.8 million for flights that never took place.  These parties received Festival Funds at the unfair expense of Fyre Festival's defrauded investors, creditors and ticketholders.  These expenditures are collectively referred to herein as the "<u>Festival Fraudulent Transfers</u>". Complaint, ¶ 64.

31.  McFarland commingled in his personal account his assets and the assets of Fyre Festival, Fyre Media and possibly other entities under his control.  During the period where the

Festival to McFarland Transfers were made, McFarland spent not less than $315,645.87 on personal expenses including a luxury penthouse apartment, interior design and home furnishings, hotel stays, dining and entertainment, transportation, clothing and other things.  Complaint, ¶ 65.

32. Other Festival Funds were simply used to make "preferential transfers" to certain of Fyre Festival's creditors, which should be recovered by the Trustee for the benefit of all of the creditors of Fyre Festival (collectively, the "<u>Festival Preferential Transfers</u>").  Complaint, ¶ 66.

33. In the fourth cause of action in the Complaint, and as part of the relief requested in the Default Judgment Order, the Trustee seeks a declaration that the Trustee has the exclusive right to pursue the recovery of Insider Fraudulent Transfers and Festival Preferential Transfers of the Festival Funds.  The Trustee seeks this relief because of, among other things, the following:

- The Festival Funds are or were the property of Fyre Festival.

- McFarland controlled the financial affairs of both Fyre Festival and Fyre Media.

- McFarland never established separate financial accounts for Fyre Festival and used the financial accounts of Fyre Media for conducting the business of both Fyre Entities. McFarland deposited a majority of the Festival Funds into the financial accounts of Fyre Media.

- McFarland transferred at least $10,993,267.51 of the Festival Funds in the account of Fyre Media to his personal financial accounts.

- McFarland commingled the funds of the Fyre Entities and never maintained a separate accounting for each of the Fyre Entities.

- Certain of the Festival Funds disbursed from the accounts of Fyre Media and McFarland were used to make the Insider Fraudulent Transfers and Festival Preferential Transfers that the Trustee intends to pursue recovery of from the ultimate recipients for the benefit of creditors of Fyre Festival.

- Had McFarland deposited and disbursed Festival Funds to and from financial accounts owned by Fyre Festival, then the Trustee would have the exclusive right to pursue the avoidance of the Insider Fraudulent Transfers and the Festival Preferential Transfers.

Complaint, ¶¶ 84-92.

### B. Actual Fraudulent Transfers

34. In the fourth cause of action in the Complaint, and as part of the relief requested in the Default Judgment Order and Judgment, the Trustee seeks a judgment against both Defendants in the amount of the Festival to McFarland Transfers of $10,993,267.51, and making each jointly and severally liable therefor, and against Fyre Media in the additional amount of $3,422,079.12, the difference between the total Insider Fraudulent Transfers and the Festival to McFarland Transfers, pursuant to sections 544(b), 548(a)(1)(A) and 550 of the Bankruptcy Code and section 276 of the New York Debtor and Creditor Law ("NYDCL").[8]

35. To establish a claim for an actual fraudulent transfer under section 548(a)(1)(A) of the Bankruptcy Code, a plaintiff must establish the actual fraudulent intent of the transferor. *Gowan v. The Patriot Group, LLC (In re Dreier LLP)*, 452 B.R. 391, 423 (Bankr. S.D.N.Y. 2011). Similarly, liability for an actual fraudulent transfer under section 276 of the NYDCL is established if a transfer is made with intend to defraud on the part of the transferor. *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005). A default is generally "an admission of all well-pleading allegations against the defaulting party." *D.H. Blair & Co. v. Gottdiener,* 462 F.3d 95, 107 (2d Cir. 2006) (citations omitted). Here, the Trustee has alleged that the transfers were made

---

[8] Bankruptcy Code Section 548(a)(1)(A) provides, in pertinent part:

> The trustee may avoid any transfer . . . of an interest of the debtor in property, or any obligation . . . incurred by the debtor, that was made or incurred on or within 2 years before the date of the filing of the petition, if the debtor voluntarily or involuntarily – (A) made such transfer or incurred such obligation with actual intent to hinder, delay, or defraud any entity to which the debtor was or became, on or after the date that such transfer was made or such obligation was incurred, indebted.

11 U.S.C. § 548(a)(1)(A).

Section 276 of the NYDCL provides:

> Every conveyance made and every obligation incurred with actual intent, as distinguished from intent presumed in law, to hinder, delay, or defraud either present or future creditors, is fraudulent as to both present and future creditors.

N.Y. Debt. & Cred. § 276.

within two years of the Petition Date and that the transfers were made with the actual intent to hinder, delay, and/or defraud present or future creditors of Fyre Festival.  *See* Complaint, ¶¶ 51-57, ¶¶ 70-80.  The Defendants' failure to defend this action has the effect of admitting the Trustee's allegations.  Accordingly, this establishes the Defendants' liability for actual fraudulent transfers under section 548(a)(1)(A) of the Bankruptcy Code and section 276 of the NYDCL.

36.    After establishing the Defendants' liability for actual fraudulent transfers, damages are calculated by determining "the amount of monies wrongfully received by the various transferees."  *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971 (NG) (MDG), 2014 WL 2594340, at *5 (E.D.N.Y. June 10, 2014).

37.    To determine the amount of damages recoverable from Defendants, the Court may rely upon financial records reflecting the amount of the transfers made to the Defendants.  *Id.* at *4 (granting motion seeking default judgment and awarding damages based upon the receiver's declaration and relevant documentary evidence).  Here, the Trustee's professionals reviewed the Defendants' bank statements and any other available information to determine the amount of fraudulent transfers the Defendants received.  Exhibits "A" and "B" to the Complaint accurately reflect the bank account information, transaction date and amount of funds transferred to Defendants.  Copies of the relevant portions of bank statements highlighting the transfers are voluminous and can be provided to the Court upon request.  Stevens Affidavit, ¶ 19.

38.    Based upon the foregoing, the Trustee respectfully submits that entry of the Default Judgment Order and Judgment is appropriate.

## NOTICE

39.    Notice of this Motion and the opportunity for a hearing thereon will be given to the Defendants at the following addresses:

>Fyre Media Inc.
>c/o CT Corporation Systems
>28 Liberty Street
>New York, NY 10005
>
>Fyre Media Inc.
>c/o CT Corporation Systems
>111 8th Ave., 13th Fl.
>New York, NY 10011
>
>Fyre Media Inc.
>Attn: William McFarland, Inmate No. 91186-054
>FCI Elkton, Federal Correctional Institution
>P.O. Box 10
>Lisbon, OH 44432
>
>William McFarland, Inmate No. 91186-054
>FCI Elkton, Federal Correctional Institution
>P.O. Box 10
>Lisbon, OH 44432

**NO PRIOR RELIEF**

40. No prior application for the relief sought herein has been made to this or any other court.

[*Continued on next page*]

**WHEREFORE**, the Trustee respectfully requests that the Motion be granted, that the Court enter the Default Judgment Order and Judgment, and that he be granted such other and further relief as is just.

Dated: New York, New York
December 18, 2019

                                        **KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**

By:   */s/ Fred Stevens*
      Fred Stevens
      Lauren C. Kiss
      Christopher J. Reilly
      200 West 41st Street, 17th Floor
      New York, New York 10036
      Tel: (212) 972-3000
      Fax: (212) 972-2245
      Email: fstevens@klestadt.com
             lkiss@klestadt.com
             creilly@klestadt.com

*Special Litigation Counsel to Gregory M. Messer, Chapter 7 Trustee of the Estate of Fyre Festival LLC*