**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| In re:<br><br>    FYRE FESTIVAL LLC,<br><br>                          Debtor.<br><br>---<br><br>GREGORY M. MESSER, as Chapter 7<br>Trustee of the Estate of Fyre Festival LLC,<br><br>                          Plaintiff,<br><br>              v.<br><br>FYRE MEDIA INC., and WILLIAM Z.<br>McFARLAND, a/k/a Billy McFarland,<br><br>                          Defendants. | **FOR PUBLICATION**<br><br>Chapter 7<br><br>Case No. 17-11883 (MG)<br><br><br><br><br><br><br><br>Adv. Pro. Case No. 19-01340 (MG) |

**MEMORANDUM OPINION GRANTING TRUSTEE'S MOTION FOR ENTRY OF A DEFAULT JUDGMENT**

*A P P E A R A N C E S:*

**KLESTADT WINTERS JURELLER
SOUTHARD & STEVENS, LLP**
*Special Litigation Counsel to Gregory M.
Messer, Chapter 7 Trustee of the Estate of
Fyre Festival LLC*
200 West 41st Street, 17th Floor
New York, NY 10036-7023
By: Fred Stevens, Esq.
    Lauren C. Kiss, Esq.
    Christopher J. Reilly, Esq.

**MARTIN GLENN**
**UNITED STATES BANKRUPTCY JUDGE**

Pending before the Court is a motion by Gregory M. Messer ("Messer" or the "Trustee") as chapter 7 trustee of the estate of Fyre Festival LLC ("Fyre Festival" or the "Debtor"), plaintiff in this adversary proceeding, seeking an order (a) declaring that (i) the funds raised for and by Fyre Festival were property of Fyre Festival, and (ii) the Trustee has the exclusive right to pursue the avoidance of any transfers of those funds by Fyre Media Inc. ("Fyre Media") or William Z. McFarland, a/k/a Billy McFarland ("McFarland," and together with Fyre Media, the "Defendants") for the benefit of Fyre Festival's bankruptcy estate, and (b) directing the entry of a default judgment against Defendants in the amounts discussed below. ("Motion," ECF Doc. # 12; "Proposed Order," *id.*, Ex. B; "Judgment," *id.*, Ex. C.) The Trustee submitted an affidavit of Fred Stevens, Esq. ("Stevens Affidavit"), in support of the Motion. (Motion, Ex. A.)

For the reasons explained below, the Court grants the Motion. A separate Order (in the form submitted by the Trustee's counsel) will be entered granting the relief requested by the Trustee and directing the entry of a default judgment for the amounts of liquidated claims as set forth below, and without prejudice to additional judgments on unliquidated claims. A separate judgment will be entered against Defendants Fyre Media and McFarland, jointly and severally, in the amount of $10,993,267.51, and, additionally, against Defendant Fyre Media in the amount of $3,422,079.12 (collectively, the "Liquidated Claims").[1]

---

[1] The Liquidated Claims include: Claim No. 1 (Declaratory Judgment – Property of the Estate – 11 U.S.C. § 541); Claim No. 2 (Fraudulent Conveyance – Actual Fraud – 11 U.S.C. §§ 544(b), 548(a)(1)(A) and 550; and NYDCL (as defined below) § 276); and Claim No. 4 (Declaratory Judgment – Exclusive Right to Pursue any Avoidance of Festival Funds Transfers). (Motion at 3 n. 3; "Complaint," ECF Doc. # 1.)

2

## I.   BACKGROUND

### A.   General Background

On July 7, 2017 (the "Petition Date"), an involuntary petition under chapter 7 of the Bankruptcy Code was filed against the Debtor by John Nemeth, Raul Jimenez and Andrew Newman.  (Motion ¶ 1.)  On August 29, 2017, the Court entered the order for relief in the Debtor's case.  (*Id.* ¶ 2.)  On or around August 31, 2017, Messer was appointed interim trustee of the Debtor's estate.  On or about November 17, 2017, Messer presided over the first meeting of creditors pursuant to section 341(a) of the Bankruptcy Code and became the permanent trustee.  (*Id.* ¶ 4.)  On December 13, 2017, the Court entered an order designating McFarland as the person responsible for performing the Debtor's duties under the Bankruptcy Code.  (*Id.* ¶ 3.)  To date, McFarland has not filed the required bankruptcy schedules or statement of financial affairs, or testified at a meeting of creditors.  (*Id.*)

On August 28, 2019, the Trustee filed the Complaint against the Defendants seeking, *inter alia*, declaratory relief, the avoidance and recovery of certain fraudulent transfers and related relief, including payment of attorneys' fees and costs, and damages for breach of fiduciary duties.  (Motion ¶ 9; Complaint.)  On August 30, 2019, the Clerk of the Court issued a summons requiring the Defendants to appear in this action.  ("Summons," ECF Doc. # 3.)  On September 5, 2019, the Summons and Complaint were personally served upon Fyre Media by first class mail at the address designated by Fyre Media with the New York State Department of State for the service of legal process.  (Motion ¶ 11 (citing Stevens Affidavit ¶ 5).)  The Affidavit of Service attesting to the proper service of the Summons and Complaint upon Fyre Media was filed.  (ECF Doc. #

3

4.) In addition, on September 10, 2019, the Summons and Complaint were served upon Fyre Media by first class mail by serving McFarland at his address at FCI Otisville, Federal Correctional Institution, where he was incarcerated at the time of service. (Motion ¶¶ 11–12.) A Certificate of Service attesting to the additional service of the Summons and Complaint was filed. (ECF Doc. # 5.) An Affidavit of Service attesting to the proper service of the Summons and Complaint against McFarland was filed. (ECF Doc. # 4.)

    The Defendants did not timely respond to the Complaint. (Motion ¶ 17.) In a September 14, 2019 letter to the Trustee's counsel, McFarland acknowledged receipt of the Summons and Complaint, accepted responsibility for repaying "every dollar owed to investors and ticket holders," and expressed his willingness to "do whatever [he] can to help and/or provide the least amount of friction for [the Trustee], creditors, and the [C]ourt." (*Id.* (citing Stevens Affidavit ¶ 13).) Accordingly, the Trustee argues that Defendants have defaulted on their obligation to respond to the Summons and Complaint, and consented to the entry of judgments. (*Id.*) On October 16, 2019, the Clerk of the Court entered certificates of default against the Defendants. (ECF Doc. ## 8, 9.)

    The Trustee seeks entry of a default judgment pursuant to Federal Rule of Bankruptcy Procedure 7055(b)(2).

### B.    The Trustee's Motion for Entry of the Proposed Order and Judgment

    First, the Trustee seeks entry of an order declaring that the funds raised for and by Fyre Festival were property of Fyre Festival. (Motion ¶ 28; Proposed Order.) The Motion states that Fyre Festival maintained only two financial accounts, which were escrow accounts maintained at First Western Trust Bank for the benefit of an air travel

4

vendor (the "Air Travel Accounts"). (*Id.* ¶ 23.) The Air Travel Accounts were established and used exclusively in connection with the booking of and payment for flights, a requirement of the Federal Aviation Administration. (*Id.*) The Air Travel Accounts were funded with at least $1.8 million in Festival Funds (defined below), including three transfers identified by the Trustee in the Motion—$1.22 million from McFarland that he received from Fyre Media; $313,000 from Fyre Media; and $240,000 from an alleged defrauded investor, Carola Jain. (*Id.* ¶ 24.)

All other funds raised and expended by Fyre Festival were deposited into and disbursed directly from accounts maintained by Fyre Media and McFarland. (*Id.* ¶ 25.) Not less than $14,415,346 of Fyre Festival's funds (together with any funds borrowed by, invested in, received for the account of, or otherwise belonging to Fyre Festival, the "Festival Funds") were transferred to, deposited into and disbursed from Fyre Media's bank accounts. (*Id.* ¶ 26 (citing "Festival to Media Transfers," Complaint, Ex. A).) The Festival to Media Transfers include $10,471,000 in transfers by investors in and lenders to Fyre Festival, $1,404,531.86 in revenues from ticket purchasers, $1,500,000 from a company that paid for advance ticket sales, and $1,039,814.77 from ticket purchasers for amounts put on their prepaid wristbands (the "Fyre Bands"). (*Id.* (citing Complaint ¶ 61).) Fyre Media then made transfers of Festival Funds to McFarland ("Festival to McFarland Transfers," and together with the Festival to Media Transfers, the "Insider Fraudulent Transfers"). (Complaint, Ex. B.) The Festival to McFarland Transfers from January 1, 2017 to April 30, 2017 were not less than $10,993,267.51. (Motion ¶ 27 (citing Complaint ¶ 62).)

5

The Trustee therefore seeks a declaration that the Festival Funds were and, to the extent that they have not been transferred by Fyre Media or McFarland, are the property of Fyre Festival. The Trustee argues that this relief should be granted because the Festival Funds—which were transferred to the Defendants via the Insider Fraudulent Transfers—were raised by investors in the Fyre Festival, lenders to the Fyre Festival, purchasers of tickets to the Festival, and purchasers of prepaid Fyre Bands. Therefore, the Trustee submits that Festival Funds were or are the property of Fyre Festival. (Motion ¶ 28.)

Second, the Motion seeks entry of an order declaring that the Trustee should have the exclusive right to pursue the avoidance of any transfers of funds by the Defendants for the benefit of Fyre Festival's bankruptcy estate. (*Id.* ¶ 33.) Some of the Festival Funds were used to pay vendors and service providers which provided legitimate and necessary services to the Fyre Festival. (*Id.* ¶ 29.) The Motion lists, however, many services that were paid for but never materialized—musical acts, food, and flights; models and influencers who promoted the Festival at significant cost without disclosing to the public that they were paid for promoting the Festival; and a production company that ultimately used the footage to produce a Netflix documentary. (*Id.* ¶ 30.) The Motion argues that these parties received Festival Funds at the unfair expense of Fyre Festival's defrauded investors, creditors and ticketholders (the expenditures collectively, the "Festival Fraudulent Transfers"). (*Id.*) Further, McFarland commingled in his personal account his assets and the assets of Fyre Festival, Fyre Media and possibly other entities under his control. (*Id.* ¶ 31.) During the period where the Festival to McFarland Transfers were made, McFarland spent not less than $315,645.87 on personal expenses.

6

(*Id.*)  Other Festival Funds were used to make "preferential transfers" to certain of Fyre Festival's creditors, which the Trustee argues should be recovered for the benefit of all of the creditors of Fyre Festival (the "Festival Preferential Transfers").  (*Id.* ¶ 32.)

The Trustee's Proposed Order seeks a declaration that the Trustee has the exclusive right to pursue the recovery of Insider Fraudulent Transfers and Festival Preferential Transfers of the Festival Funds.  (*Id.* ¶ 33.)  The Trustee submits that such relief should be granted based upon, *inter alia*, the following:

- The Festival Funds are or were the property of Fyre Festival;

- McFarland controlled the financial affairs of both Fyre Festival and Fyre Media;

- McFarland never established separate financial accounts for Fyre Festival and used the financial accounts of Fyre Media for conducting the business of both Fyre Media and Fyre Festival (the "Fyre Entities");

- McFarland deposited a majority of the Festival Funds into the financial accounts of Fyre Media;

- McFarland transferred at least $10,993,267.51 of the Festival Funds in the account of Fyre Media to his personal financial accounts;

- McFarland commingled the funds of the Fyre Entities and never maintained a separate accounting for each of the Fyre Entities;

- Certain of the Festival Funds disbursed from the accounts of Fyre Media and McFarland were used to make the Insider Fraudulent Transfers and Festival Preferential Transfers that the Trustee intends to pursue recovery of from the ultimate recipients for the benefit of creditors of Fyre Festival; and

7

- Had McFarland deposited and disbursed Festival Funds to and from financial accounts owned by Fyre Festival, then the Trustee would have the exclusive right to pursue the avoidance of the Insider Fraudulent Transfers and the Festival Preferential Transfers.

(Motion ¶ 33 (citing Complaint ¶¶ 84–92).)

Third, the Trustee seeks a judgment against both Defendants, jointly and severally, in the amount of $10,993,267.51, representing the Festival to McFarland Transfers, and against Fyre Media in the additional amount of $3,422,079.12, representing the difference between the total Insider Fraudulent Transfers and the Festival to McFarland Transfers, pursuant to sections 544(b), 548(a)(1)(A) and 550 of the Bankruptcy Code and section 276 of the New York Debtor and Creditor Law ("NYDCL"). (Motion ¶ 35.)

Further, the Trustee also seeks an order entitling him to additional default judgments against Defendants on all claims in the Complaint that require additional evidentiary submissions to determine the amount of damages (the "Unliquidated Claims").[2] The Trustee states that he may seek a determination of the amount of the Unliquidated Claims upon a motion on notice to Defendants in the future to the extent that the judgment on the Liquidated Claims would be satisfied. (Motion at 3.)

## II.  LEGAL STANDARD

This Court recently set forth the legal standard for an entry of a default judgment:

> Rule 55 of the Federal Rules of Civil Procedure, made applicable to this adversary proceeding by Bankruptcy Rule 7055, "provides a 'two-step process' for the entry of a judgment against a party

---

[2] The Unliquidated Claims include: Claim No. 3 (Attorneys' Fees for Avoidance of Conveyance Made with Intent to Defraud – 11 U.S.C. § 544(b), and NYDCL § 276-a); and Claim No. 5 (Breach of Fiduciary Duties). (Motion at 3 n.4; Complaint.)

8

> that fails to defend: first, the entry of a default, and second, the entry of a default judgment." *City of New York v. Mickalis Pawn Shop, LLC*, 645 F.3d 114, 128 (2d Cir. 2011) (quoting *New York v. Green*, 420 F.3d 99, 104 (2d Cir. 2005)). "The first step, entry of a default, formalizes a judicial recognition that a defendant has, through its failure to defend the action, admitted liability to the plaintiff." *Id.* "The second step, entry of a default judgment, converts the defendant's admission of liability into a final judgment." *Id.*
>
> A default generally is "an admission of all well-pleaded allegations against the defaulting party." *D.H. Blair & Co. v. Gottdiener*, 462 F.3d 95, 107 (2d Cir. 2006). However, "allegations in the complaint with respect to the amount of the damages are not deemed true." *Credit Lyonnais Sec. (USA), Inc. v. Alcantara*, 183 F.3d 151, 155 (2d Cir. 1999). Accordingly, the trial court "must . . . conduct an inquiry in order to ascertain the amount of damages with reasonable certainty." *Id.* (citing *Transatlantic Marine Claims Agency, Inc. v. Ace Shipping Corp.*, 109 F.3d 105, 111 (2d Cir. 1997)). Ascertaining damages involves two steps: (1) "determining the proper rule for calculating damages on such a claim," and (2) "assessing plaintiff's evidence supporting the damages to be determined under this rule." *Credit Lyonnais*, 183 F.3d at 155.

*Feltman v. Tri-State Emp. Serv., Inc.* (*In re TS Emp., Inc.*), 602 B.R. 840, 844–45 (Bankr. S.D.N.Y. 2019).

In *Exec. Sounding Bd. Assoc. v. Advanced Mach. & Engineering Co. (In re Oldco M. Corp.)*, 484 B.R. 598, 600 (Bankr. S.D.N.Y. 2012), this Court entered a default judgment against a properly served defendant who failed to respond to the complaint, where the plaintiff filed (i) a proof of service of the summons and complaint on the defendant; (ii) a proof of service of a second summons and complaint on the defendant; (iii) a proof of service of the certificate of default on the defendant; and (iv) a proof of service of the motion for the entry of a default judgment and supporting declaration on the defendant.

Although the Court's opinion in *Oldco M. Corp.* predated the Supreme Court's decision in *Wellness Int'l Network, Ltd. v. Sharif*, 575 U.S. 665 (2015), the Court's

9

reasoning underlying the opinion in *Oldco M. Corp.* remains sound in that bankruptcy judges may enter default judgments based on implied consent resulting from a defendant's failure to respond to a summons and complaint. Other bankruptcy court decisions after *Wellness* have applied *Oldco M. Corp.* and concluded that bankruptcy judges may enter default judgments based on implied consent resulting from a defendant's failure to respond to a summons and complaint. *See, e.g.*, *Reid v. Wolf (In re Wolf)*, 595 B.R. 735, 753 (Bankr. N.D. Ill. 2018); *Campbell v. Carruthers (In re Campbell)*, 553 B.R. 448, 452–53 (Bankr. M.D. Ala. 2016); *Hopkins v. M & A Ventures, dba Hiwide Transp. Ltd. (In re Hoku Corp.)*, AP No. 15-08043-JDP, 2015 WL 8488949, at *1–2 (Bankr. D. Idaho Dec. 10, 2015).

### III.   DISCUSSION

The Trustee is entitled to entry of a Default Judgment. The Complaint was properly served on Defendants and they failed to timely respond to the Complaint. All well-pleaded allegations in the Complaint are admitted and deemed to be true.

With respect to the request for declaratory relief, the moving papers clearly establish that the Festival Funds, to the extent they were not transferred, were and are property of the Debtor's estate. And, to the extent that they were transferred, the Trustee has the exclusive right to seek to recover Festival Funds that were transferred that may be recoverable as preferential or fraudulent transfers.

The Trustee seeks to recover fraudulent transfers under sections 544(b), 548(a)(1)(A) and 550 of the Bankruptcy Code and section 276 of the NYDCL. Section 544(b)(1) of the Bankruptcy Code incorporates "applicable law," and NYDCL applies in this adversary proceeding. 11 U.S.C. § 544(b)(1). The Complaint alleges that transfers

were made with the actual intent to hinder or delay present or future creditors of the Debtor within the meaning of section 276 of NYDCL. (*See* Complaint ¶¶ 51–57, 70–80.) "Liability for an actual fraudulent transfer under section 276 of the NYDCL is established if a transfer is made with intent to defraud on the part of the transferor. A default generally is an admission of all well-pleaded allegations against the defaulting party." *In re TS Emp., Inc.*, 602 B.R. at 845 (citing *In re Sharp Int'l Corp.*, 403 F.3d 43, 56 (2d Cir. 2005)) (some internal citations omitted). Here, the Defendants failed to respond to the well-pleaded allegations of actual fraudulent transfer under section 276 of the NYDCL. (*See* Motion ¶ 17.) This establishes the Defendants' liability for actual fraudulent transfers under section 276 of NYDCL.

The Motion also sets forth the proper damages rule. "To ascertain damages, the Court carries out the first step—'determining the proper rule for calculating damages . . . .' *Credit Lyonnais*, 183 F.3d at 155. After establishing the Defendants' liability for an actual or constructive fraudulent transfer under sections 273 or 276 of NYDCL, the Court calculates the amount of damages by determining 'the amount of monies wrongfully received by the various transferees.'" *In re TS Emp., Inc.*, 602 B.R. at 846 (quoting *Fed. Nat'l Mortg. Ass'n v. Olympia Mortg. Corp.*, No. 04-CV-4971 NG MDG, 2014 WL 2594340, at *5 (E.D.N.Y. June 10, 2014)) (some internal citations omitted).

"[T]he Court carries out the second step in ascertaining the damages by 'assessing plaintiff's evidence supporting the damages to be determined under this rule.'" *In re TS Emp., Inc.*, 602 B.R. at 847 (quoting *Credit Lyonnais*, 183 F.3d at 155). "To determine the amount of damages recoverable from a transferee, courts may rely on financial records reflecting the amount of the transfers made to the transferee." *Id.* at 846.

11

Here, the Trustee's professionals reviewed the Defendants' financial records, including bank statements and any other available information to determine the dates and amounts of fraudulent transfers the Defendants received. The Motion attests to the accuracy of the bank account information, and the transaction dates and amounts of funds transferred to Defendants as reflected in Exhibits A and B attached to the Complaint. (Motion ¶ 37 (citing Stevens Affidavit ¶ 19).) The Trustee has established by a preponderance of the evidence that Defendants Fyre Media and McFarland wrongly received transfers of $10,993,267.51, and that Defendant Fyre Media wrongfully received transfers of an additional amount of $3,422,079.12, the difference between the total Insider Fraudulent Transfers and the Festival to McFarland Transfers. (Motion ¶ 35.)

### IV.    CONCLUSION

For the foregoing reasons, the Court grants the Trustee's Motion. A separate Order Directing the Entry of a Default Judgment (in the form submitted by the Trustee's counsel) shall be entered. Additionally, a separate Judgment By Default Against Defendants Fyre Media Inc. and William Z. McFarland shall be entered (again in the form submitted by the Trustee's counsel), providing for joint and several liability of Defendants Fyre Media Inc. and William Z. McFarland in the amount of $10,993,267.51; and, additionally, for liability of Defendant Fyre Media Inc. in the amount of $3,422,079.12.

Dated:    February 11, 2020
         New York, New York

*Martin Glenn*
MARTIN GLENN
United States Bankruptcy Judge